THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ELAINE AND VICTOR SWANGER, :
as parents and legal guardians of :
Bobbie Jo Swanger, and BOBBIE JO :
SWANGER :
          Plaintiffs :
    v. :   4:11-CV-894
  :   (JUDGE MARIANI)
WARRIOR RUN :
SCHOOL DISTRICT, et al., :
  :
          Defendants :

## I. Introduction

Before the Court is a Motion to Dismiss by Defendants Cross, Barenzetti, Osenga, and Del Gotto (Doc. 41). For the reasons that follow, the Court will grant in part and deny in part Defendants' motion.

## II. Factual Allegations

Plaintiffs Elaine and Victor Swanger bring suit against Defendants on behalf of their daughter, Plaintiff Bobbie Jo, a special needs student with a learning disability. (Am. Compl., at ¶¶ 1, 20). Defendant Warrior Run School District ("WRSD") is a recipient of state and federal funds. (*Id.* at ¶ 6). Defendants Cross and Barenzetti are the Principal and Assistant Principal, respectively, at Bobbie Jo's school, Warrior Run High School ("WRHS"). (*Id.* at ¶¶ 4-5). Defendants Osenga and Del Gotto are Bobbie Jo's teachers in her Life Skills classes. (*Id.* at ¶¶ 7-8). Defendants Cross, Barenzetti, Osenga, and Del Gotto (collectively, "School Defendants") are being sued in their individual and official capacities. (*Id.* at ¶¶ 4-

8). Plaintiffs also sue WRSD and individual adult defendant, Duane Mattison ("Mattison"), also a special needs student. (*Id.* at ¶¶ 6, 9).

Bobbie Jo and Mattison were enrolled in the same Life Skills classes at WRHS. (*Id.* at ¶ 20). Plaintiffs allege that Defendants Osenga and Del Gotto "routinely seated Defendant Mattison beside Bobbie Jo Swanger at a table or behind her in a desk in the classrooms, even when the lights were out." (*Id.* at ¶ 21). As a result of Bobbie Jo's proximity to Mattison, she was subject to unwanted sexual touching and harassment by Mattison on numerous occasions, including "Mattison placing his hands inside Bobbie Jo Swanger's shirt on her breasts, placing his hands down her pants, exposing his genitals to her, and asking her to 'suck his dick.'" (*Id.* at ¶ 22). On March 14, 2011, Defendant Barenzetti informed Bobbie Jo's parents that Defendant Mattison had touched Bobbi Jo inappropriately in Defendant Del Gotto's classroom and that "Mattison was known to have previously acted out sexually towards another student at Warrior Run High School." (*Id.* at ¶ 24). The Amended Complaint does not state how the incident came to Defendant Barenzetti's attention or when Mattison's previous misconducts occurred. Plaintiffs allege that Mattison engaged in similar conduct towards Bobbie Jo in other classes, (*Id.* at ¶ 23) and despite the teachers' knowledge of Mattison's history, they "continued to seat Defendant Mattison near Bobbie Jo Swanger in the classroom." (*Id.* at ¶ 27). Though Defendants Osenga and Del Gotto were present when Mattison harassed Bobbie Jo, an incident which was witnessed by at least one other student (*Id.* at ¶ 26), the individual

School Defendants are alleged to have "willfully failed to register reports or to make referrals" in accordance with state law "concerning Defendant Mattison's abuse of Bobbie Jo Swanger." (*Id.* at ¶¶ 23, 27).

Plaintiffs claim individual School Defendants increased the risk of harm to Bobbie Jo by failing to timely report Mattison's conduct to the proper authorities, failing to adequately train or supervise Defendants Osenga and Del Gotto, failing to ensure proper conduct from Mattison, and being deliberately indifferent to his conduct and the risk of harm to others from his conduct. (*Id.* at ¶ 30).

The individual School Defendants move to dismiss the claim for compensatory damages under the Rehabilitation Act (Count I), the § 1983 claim (Count III) on grounds of absolute immunity and the argument that they are not state actors, and the breach of fiduciary duty claim (Count IV) on immunity grounds under the Pennsylvania Subdivision Tort Claims Act. Finally, Defendants move to dismiss the claim for punitive damages against all School Defendants under Counts III and IV.

### III. Standard of Review on Motions to Dismiss

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009). "[W]hen presented with a motion to dismiss for failure to state a claim, . . . [the] Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Iqbal*, 129 S.Ct. at 1949). The "Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211.

District courts confronted by a motion to dismiss should engage in a two-step analysis. First, the district court should accept all well-pleaded facts as true, but may reject mere legal conclusions. Second, the district court should then determine whether the facts, as asserted, establish a "plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950. Thus, a complaint must "show" an entitlement to relief with facts, as a mere allegation that a plaintiff is entitled to relief is insufficient to withstand a motion to dismiss. *See Philips v. Co. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*; *see also Fowler*, 578 F.3d at 210-11.

## IV. Analysis

### Count III (§ 1983 substantive due process)

Individual School Defendants claim they are entitled to absolute immunity under the Coverdell Act, 20 U.S.C. §§ 6731 *et seq.*, which states that "no teacher[1] in a school shall be liable for harm caused by an act or omission of the teacher on behalf of the school." *Id.* at § 6736. Immunity is available when "the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the teacher." *Id.* at § 6736(a)(4). Immunity is unavailable if Defendants failed to comply with federal, state, or local laws. Plaintiffs claim that School Defendants violated Pennsylvania's Child Protective Services Law ("CPSL"), 23 PA. CONS. STAT. § 6301[2] by failing to report to state authorities Mattison's sexual misconduct.

Defendants cite to *K.R. v. Sch. Dist. of Philadelphia*, No. 06-388, 2008 WL 2609810, at *1, 10 (E.D. Pa. June 26, 2008), in which the court granted absolute immunity to the individual school defendants, even though the plaintiffs alleged that school officials attempted to conceal verbal and physical assaults on an autistic student from her classmates. However, *K.R.* was decided on a summary judgment motion. The Amended Complaint survives a motion to dismiss because the teachers are alleged to have affirmatively placed Bobbie Jo next to Mattison in reckless disregard for her safety, and all individual School Defendants are alleged to have failed to report Mattison's misconduct. Therefore, the Court will deny without prejudice absolute immunity for Defendants.

---

[1] The protections of the Act also apply to "principals and other school professionals." 20 U.S.C. § 6732.
[2] The CPSL specifically includes school administrators and teachers as those charged with the duty to report abuse. *Id.* at § 6311(b).

Individual School Defendants also contend that they are not state actors for the purposes of a § 1983 action. The Third Circuit has held that school employees are state actors if (1) a special relationship exists between the employees and the student, (2) school officials created a dangerous environment, or (3) the school district enacted a policy, custom, or practice permitting injuries to a student's constitutional rights.[3] *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1368 (3d Cir. 1992) (finding no special relationship between school and student who had a hearing impairment and related communication problems).

## Special Relationship

The leading Third Circuit case is *D.R. by L.R.*, which interpreted Supreme Court precedent in deciding that there is usually no special relationship between school employees and students. "The Due Process Clause does not impose an affirmative duty upon the state to protect its citizens. Rather, it serves as a limitation on the state's power to act." *DeShaney v. Winnebago Cnty. Dep't of Social Srvcs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 1002, 103 L.Ed.2d 249 (1989). When the state enters into a special relationship with a particular citizen, it may be held liable for failing to protect him or her from the private actions of third parties." *Id.* at 1369. However,

> [I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf- through incarceration, institutionalization, or other similar restraint of personal liberty-which is the 'deprivation of liberty' triggering the

---

[3] Plaintiffs did not sue WRSD in Count III. Therefore, Plaintiffs are not contending that the individual School Defendants acted pursuant to a custom, policy, or practice of WRSD.

protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*Deshaney*, 489 U.S. at 200.

According to *D.R. by L.R.*, there is no special relationship between Defendants and Bobbie Jo because (1) she was not in their physical custody (unlike prisoners, the mentally ill who have been involuntarily committed, or foster children), (2) parents "retain the discretion to remove the child from classes as they see fit," and (3) she had access to help if she needed it. 972 F.2d at 1371-72. The court in *D.R.* said there was especially no state custody in the case of a special needs student because the child's parents have even greater involvement in the student's education given that they must approve the precise educational program developed for their child. *Id.* at 1371. In a later case, the Third Circuit affirmed *D.R.'s* holdings:

> [In *D.R. by L.R.*,] we held that where parents remain the primary caretakers of students and where students are not deprived of access to sources of help, there is no special relationship between the school and students, despite the state's compulsory school attendance laws. 972 F.2d at 1371-72. Like the parents in *D.R. by L.R.* who maintained custody over the high school students, the Allens, . . . maintained custody over Jaquan. In fact, the Allens had more control over Jaquan's education than other parents because they had to approve his special needs educational plan. *See D.R. by L.R.*, 972 F.2d at 1371. . . . There is no record evidence that [defendant] physically restrained Jaquan or otherwise impaired his liberty in such a fashion that prevented him from taking care of himself. In fact, as a resource-level student, Jaquan could seek the haven of his emotional support classroom or report school-related problems to his parents.

*Allen v. Susquehanna Twp. Sch. Dist.*, 233 F. App'x 149, 152 (3d Cir. 2007) (affirming the district court's grant of summary judgment in favor of the school defendants when a student

7

with a serious emotional disturbance left school without permission and was tragically struck and killed by an automobile).

Plaintiffs contend that because the teacher Defendants placed Bobbie Jo near Mattison, her liberty was restrained such that she could not move. However, the Amended Complaint does not allege that Bobbie Jo was prohibited from moving. There are no allegations that any School Defendants physically restrained Bobbie Jo. Plaintiffs further argue that because of Bobbie Jo's learning disability, she has "cognitive difficulties that greatly impaired her ability to avail herself of any resources around her to protect herself." (Doc. 43, at 8-9). Though the Amended Complaint does state that Bobbie Jo has a learning disability and is a special needs student, it nowhere alleges that her cognitive difficulties so inhibit her that she is incapable of asking for help.[4]

Therefore, the Court will reject the special relationship theory as a basis for liability under Count III because the Amended Complaint does not allege the requisite facts that would convert the non-custodial relationship between the school and Bobbie Jo to a special relationship.

### *State-Created Danger*

To establish that Defendants created a danger to Bobbie Jo, Plaintiffs must show (1) the harm ultimately caused was foreseeable and fairly direct; (2) there was conduct by a

---

[4] The *D.R. by L.R.* court also cited to *Fialkowski v. Greenwich Home for Children, Inc.*, 921 F.2d 459 (3d Cir. 1990) in which the Third Circuit found a severely retarded adult's liberty was not restrained by the state where his parents were free to remove him from the state institution if they wished, and the patient himself enjoyed considerable freedom of movement.

state actor in willful disregard for the safety of the plaintiff; (3) some relationship between the state and the plaintiff; and (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's actions to occur. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 908 (3d Cir.1997). "It is important to stress, . . . that liability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger." *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 282 (3d Cir. 2006) (internal quotation marks omitted). That is, under the fourth element, the state actors must have engaged in affirmative conduct. *See Adam C. ex rel. Dennis C. v. Scranton Sch. Dist.*, No. 3:CV-07-0532, 2008 WL 4411849, at *8 (M.D. Pa. 2008) (dismissing case because the plaintiffs had not adequately alleged the fourth element in a case involving the parents' affirmative placement of their son at a special needs school where he was severely beaten by another emotionally disturbed student).

Thus, if Defendants Osenga and Del Gotto were aware of Mattison's history, then it would reasonably be foreseeable that he would act out again. Therefore, the Court will deny without prejudice the motion to dismiss with respect to the Defendants Osenga and Del Gotto. The Court notes that only Defendants Osenga and Del Gotto are alleged to have acted affirmatively. In contrast, according to the Amended Complaint, at most, Defendants Cross and Barenzetti engaged in nonfeasance or were negligent.

> We readily acknowledge the apparent indefensible passivity of at least some school defendants under the circumstances. Accepting the allegations as true,

9

*viz.*, that one school defendant was advised of the misconduct and apparently did not investigate, they show nonfeasance but they do not rise to the level of a constitutional violation. As in *DeShaney*, "[t]he most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them." *DeShaney*, 489 U.S. at 203, 109 S.Ct. at 1007.

*D.R. by L.R.*, 972 F.2d at 1376. However, the Court is reluctant to dismiss Defendants Cross and Barenzetti from this Count at such an early stage of the case before Plaintiffs have had an opportunity to engage in discovery. Plaintiffs have just barely met their pleading burden. Therefore, the Court will deny without prejudice the motion to dismiss with respect to Defendants Cross[5] and Barenzetti.

### Count IV (breach of fiduciary duty)

The individual School Defendants all claim they are immune on this Count based on the Political Subdivision Tort Claims Act ("PSTCA"), 42 PA. CONS. STAT. § 8541, which states: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." This immunity is also available to municipal employees under § 8545. *See also Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006). However, immunity for an official does not exist when the "act constituted a crime, actual fraud, actual malice or wilful misconduct." 42 PA. CONS. STAT. § 8550.

---

[5] In fact, Defendant Cross has not been charged with knowledge of Mattison's history or with any personal involvement in this case, other than "exercising supervisory responsibilities over the teachers" and possessing "supervisory authority to institute corrective measures on the School District's behalf." (Am. Compl. at ¶¶ 14, 16). However, for the same reasons stated above, at this time the Court will not dismiss Defendant Cross as a party to the case.
10

All individual school Defendants argue they are entitled to immunity because they acted (1) within the scope of their employment; and (2) their actions did not constitute a crime, actual fraud, actual malice, or willful misconduct. The Third Circuit Court of Appeals has held that "willful misconduct" in this context has the same meaning as the term "intentional tort." *Bright*, 443 F.3d at 287. "[E]ven where a public employee acts with a degree of culpability equivalent to "recklessness," Pennsylvania law nevertheless affords him immunity." *Id.* at 287. Proof of conduct which abrogates immunity under the PTSCA requires a "demanding level of fault." *Sanford v. Stiles*, 456 F.3d 298, 316 (3d Cir. 2006) (affirming district court's grant of summary judgment in favor of school counselor who had made conscious judgment that student was not suicidal, even though the student later committed suicide); *see also Vicky M. v. Ne. Educ. Inter. Unit*, 689 F. Supp. 2d 721, 741 (M.D. Pa. 2009) (denying on summary judgment motions immunity to teacher who allegedly used restraints on students and left students restrained on the floor, but granting immunity to supervisors on motions for summary judgment). In *Vicky M.*, with respect to the supervisory School Defendants, Judge Caputo said:

> When considering the actions of supervisors, evidence which demonstrates deliberate indifference fails to establish the type of willful misconduct necessary to pierce PSTCA immunity. *Bright*, 443 F.3d 276, 287 (3d Cir. 2006). While Plaintiffs correctly allege willful misconduct, they have failed to provide any evidence which demonstrates this high level of fault. . . . Even examining the record in the light most favorable to the Plaintiffs, the conduct of [defendants] was at best negligent. Likewise, while the conduct of the NEIU defendants potentially rises to the level of deliberate indifference, even this type of conduct is immunized under the PSTCA. *Bright*, 443 F.3d at 287 (allegation of deliberate indifference not enough to avoid PSTCA immunity).

11

*Vicky M.*, 689 F. Supp. 2d at 741. At this time, consistent with the Court's discussion on the state-created danger theory, the Court will deny without prejudice immunity under the PSTCA to the individual School Defendants.

### Compensatory Damages under Count I (Rehabilitation Act)

Under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("RA"), Plaintiffs must show that Bobbie Jo is (1) a handicapped individual, (2) is otherwise qualified for participation in the special needs programs, (3) the School District receives federal financial assistance, and (4) she was denied the benefits of or subject to discrimination under the program solely by reason by her disability. *Nathanson v. Med. Coll. of Pennsylvania*, 926 F.2d 1368, 1380 (3d Cir. 1991).

Defendant WRSD moves to dismiss compensatory damages under the RA because Plaintiffs did not allege that WRSD's actions were intentional. *Kaitlin C. by Shannon M. v. Cheltenham Twp. Sch. Dist.*, No. 07-2930, 2010 WL 786530, at *4 (E.D. Pa. Mar. 5, 2010) (granting motion to dismiss). Previously, the Third Circuit stated that a plaintiff does not need to prove that the defendant's discrimination was intentional. *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 253 (3d Cir. 1999). But the *Kaitlin C.* court distinguished *Ridgewood* by saying, "Section 504 covers a wide range of conduct and offers many remedies. There is no indication that the court's statement in *Ridgewood* was intended to apply to § 504 claims seeking compensatory damages." *Kaitlin C.*, 2010 WL 786530, at *4. It then went on to

explain in detail why compensatory damages were unavailable absent an allegation of intentional discrimination.[6]

In response, Plaintiff cites to only *Vicky M.*, a case relying on *Ridgewood* that was decided by Judge Caputo before *Kaitlin C.* was decided. In *Vicky M.*, Judge Caputo concluded that intentional discrimination need not be alleged in a complaint. However, *Kaitlin C.* has been cited with approval by courts in every federal district in Pennsylvania. Furthermore, Judge Caputo expressly relied on *Kaitlin C.* in a decision subsequent to *Vicky M. Adam C. v. Scranton Sch. Dist.*, No. 3:07-CV-532, 2011 WL 4072756, at *2 (M.D. Pa. Sep. 3, 2011) ("In a comprehensive analysis of the above quote from *Ridgewood*, the *Kaitlin C.* court determined that "[t]here is no indication that the court's statement in *Ridgewood* was intended to apply to § 504 claims seeking compensatory damages. The Rehabilitation Act's remedies provision and Supreme Court precedent support this reading of *Ridgewood*." *Id.* at *4. . . . [I]ntentional discrimination is required to obtain damages under Section 504."). Construing Amended Complaint in Plaintiffs' favor, Plaintiffs just barely meet the threshold of pleading requirements to survive a motion to dismiss. Plaintiffs allege that Defendant WRSD "failed to provide [Bobbie Jo] with the same protection that all other students were provided by repeatedly seating her near . . . Defendant Mattison." (Doc. 34, ¶ 35).

---

[6] There appears to be no Third Circuit precedent on this issue. The *Kaitlin C.* court noted that the remedies provision of the RA tracked the remedies available under Title VI of the Civil Rights Act of 1964. *Id.* Then, analyzing three Supreme Court cases which interpreted Title VI, the *Kaitlin C.* court concluded that based on Supreme Court precedent, compensatory damages were available only when intentional discrimination was shown. *Id.* at **4-5. It then inserted a footnote which listed several cases from four other circuits that had concluded that intentional discrimination must be shown for a plaintiff to obtain compensatory damages under Section 504 of the RA. *Id.* at *5, n.6.

Furthermore, Defendants' actions constituted a "conscious disregard" for Bobbie Jo's disability. (*Id.* at ¶ 38). Thus, by the thinnest of margins, Plaintiffs have alleged intentional conduct on the part of Defendant WRSD. Therefore, the Court will deny without prejudice Defendants' motion to dismiss the claim for compensatory damages under the RA.

## Punitive Damages under Counts III and IV

Plaintiffs are suing individual School Defendants for monetary damages in both their official and personal capacities. To win monetary damages, though, Plaintiffs can sue defendants in their individual capacities only. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *Indep. Enter. Inc. v. Pittsburgh Water and Sewer Auth.*, 103 F.3d 1165, 1173 (3d Cir. 1997). Therefore, the Court will dismiss Counts III and IV against individual School Defendants in their official capacities.

Punitive damages are available against state or local officials in their personal capacities when their conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640, 75 L. Ed. 2d 632 (1983); *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989).

Based on Plaintiffs' allegations of Defendants' deliberate indifference and intentional conduct, the Court will deny without prejudice the motion to dismiss punitive damages with respect to all School Defendants in their individual capacities because at this time the Court is without sufficient facts that would enable it to make a final ruling on the matter.

## V. Conclusion

For the abovementioned reasons, the Court will grant in part and deny in part Defendants' Motion to Dismiss. (Doc. 41). The Court will deny without prejudice absolute immunity to individual School Defendants under the Coverdell Act on Count III. The Court will not dismiss Count III (§ 1983 substantive due process claim) based on a state-created danger theory, but it will reject the special relationship theory as a basis for liability on the count. The Court will deny without prejudice immunity to individual School Defendants under the PSTCA on Count IV (breach of fiduciary duty claim). The Court will deny without prejudice the motion to dismiss the claim for compensatory damages under Section 504 of the RA (Count I). Finally, the Court will dismiss the claim for punitive damages against all individual School Defendants in their official capacities but will deny without prejudice the motion to dismiss punitive damages with respect to their personal capacities.

Robert D. Mariani
United States District Judge