# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELAINE AND VICTOR SWANGER, as parents and legal guardians of B.J.S., and B.J.S.<br><br>           Plaintiffs,<br>v.<br><br>WARRIOR RUN SCHOOL DISTRICT, et al.,<br><br>           Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: 4:11-CV-894<br>: (JUDGE MARIANI)<br>:<br>:<br>:<br>: |

## MEMORANDUM OPINION

## I. INTRODUCTION

Presently before the Court is a Motion for *In Camera* Review and for Reconsideration (Doc. 111) filed by Plaintiffs, Elaine and Victor Swanger. The Motion asks the Court to reconsider its Order of March 17, 2014, in which the Court stated that "the documents listed [in the Philadelphia Diversified Treatment Claim File Privilege Log] appear beyond serious question to be generated in connection with Mattison's treatment so as to be appropriately deemed privileged." (Court Opinion and Order, Doc. 109). For the reasons discussed below, the Court will deny the Motion for Reconsideration.

## II. PROCEDURAL HISTORY

Plaintiffs filed a Complaint (Doc. 1) in this matter on May 11, 2011, an Amended Complaint on August 30, 2011 (Doc. 34), and a Second Amended Complaint on March 8, 2013 (Doc. 77). Defendants each filed a response to the Second Amended Complaint

(Docs. 78, 85, 106). Notably, Defendant Duane Mattison filed his response on March 6, 2014 (Doc. 106). On January 30, 2014, prior to Mattison's Answer, Plaintiffs filed a Motion to Compel (Doc. 96) documents contained in the Philadelphia Diversified Treatment Claim File Privilege Log (Doc. 96-1). On March 17, 2014, the Court held a conference call with counsel for the plaintiffs and counsel for the defendants, Warrior Run School District, Duane Mattison, and Diversified Treatment Alternatives, Inc. ("DTA"), specifically regarding a deposition dispute as to a DTA employee. At issue was the extent to which Plaintiffs' counsel could depose the witness as to information contained in an "erroneously" produced document by Mattison's counsel, entitled Diversified Treatment Alternatives Psychological Evaluation, dated October 25, 2010 (Doc. 96-2), as well as whether Mattison had waived his psychologist/psychiatrist-patient privilege during his June 1, 2012, deposition. The Court found that Mattison's argument that the Psychological Evaluation was erroneously supplied in disclosure amounted to an admission of a failure to assert the psychologist/psychiatrist-patient privilege as to this document and that Mattison's deposition testimony addressed most, if not all, of the historical information found in the evaluation at issue. Therefore "in the interests of justice and the proper application of the psychologist/psychiatrist-patient privilege", we identified specific areas of the report whose disclosure was not waived by Mattison, while allowing Plaintiffs' counsel to rely on other parts of the report. (See generally Doc. 109). However, while considering the Order to be dispositive of Plaintiffs' Motion to Compel, the Court agreed to consider an *in camera* review of any documents

within the privilege log at issue if Plaintiffs could present "compelling evidence as to a specific document, or documents . . . that they contend do not fall within the recognized psychologist/psychiatrist-patient privilege." (Doc. 109, n.1).

Plaintiffs have now filed a motion for reconsideration of the March 17, 2014 Order, requesting that we hold the patient/psychotherapist privilege inapplicable, or in the alternative, conduct an "*in camera* review of the documents withheld by DTA in order for the Court to determine if they should be turned over to Plaintiffs."[1] (Pls.' Br. in Supp. of Mot. for Reconsideration, Doc. 112, at 9). The parties have fully briefed the motion, and it is ripe for decision.

### III. STANDARD OF REVIEW

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Specifically, the motion is generally permitted only if (1) there is an intervening change in the controlling law; (2) new evidence becomes available that was not previously available at the time the Court issued its decision; or (3) to correct clear errors of law or fact or prevent manifest injustice. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Moreover, "motions for reconsideration should not be used to put forward arguments which the movant . . . could have made but neglected

---

[1] A motion for *in camera* review was not considered in the Court's prior Order now at issue. Therefore, it cannot be properly considered as part of Plaintiffs' Motion for Reconsideration and shall not be addressed in this Opinion.

3

to make before judgment." *United States v. Jasin*, 292 F. Supp. 2d 670, 677 (E.D. Pa. 2003) (internal quotation marks and alterations omitted) (quoting *Reich v. Compton*, 834 F. Supp. 2d 753, 755 (E.D. Pa. 1993) *rev'd in part and aff'd in part on other grounds*, 57 F.3d 270 (3d Cir. 1995)). Nor should they "be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Donegan v. Livingston*, 877 F. Supp. 2d 212, 226 (M.D. Pa. 2012) (quoting *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002)).

## IV. ANALYSIS

### A. Newly Discovered Evidence

Plaintiffs assert that Defendant Mattison's "affirmative defense that he lacked the requisite 'malice or reckless indifference to any federally protected right or [*sic*] Plaintiffs' and did not 'otherwise meet the requirements of outrageousness, maliciousness, or recklessness needed to support an award of punitive damages'" constitutes newly discovered evidence. (Doc. 112, at 4-5) (quoting Mattison's Answer to Amended Complaint, Doc. 106, ¶ 3).

Using this purported "newly discovered evidence", Plaintiffs argue that Mattison waived his patient/psychotherapist privilege by putting his mental state at issue. This is an erroneous understanding of the definition of evidence. An affirmative defense is not "newly discovered evidence." Instead, it is a legal pleading permitted under FED. R. CIV. P. 8(c) that raises a recognized legal defense, i.e. the insufficiency of Plaintiffs' claim for punitive

damages. Its assertion is not a pleading of facts which could arguably serve as a claim of new evidence. Indeed, the standard of pleading "facts" in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) has been held not to apply to affirmative defenses. *Tyco Fire Prods. LP v. Victaulic Co.*, 777 F.Supp.2d 893, 898-901 (E.D. Pa. 2011). Consequently, it is ultimately irrelevant whether or not the affirmative defense was "not ripe . . . for argument at the time of the March 17, 2014 Order" as asserted by Plaintiffs (Doc. 119, at 4).

In addition, even if an affirmative defense could constitute new evidence, Plaintiffs fail to identify how Mattison's affirmative defense does so. Mattison filed his Answer to Plaintiffs' Amended Complaint on March 6, 2014. The Court issued the Order at issue on March 17, 2014, following a conference call with counsel on that same day. Plaintiffs clearly recognize that Mattison's Answer was filed almost two weeks prior to the conference call with the Court. (Doc. 112, at 3) ("[O]n March 6, 2014, subsequent to the closing of the record concerning the Motion to Compel but prior to the Court's decision resolving the issue, Defendant Mattison filed his Answer to the Second Amended Complaint."). While this timeline confirms that the affirmative defense raised by Mattison was filed after the close of the record for the Motion to Compel, and therefore could not have been included in the appropriate briefs or the Motion itself, there was ample opportunity for Plaintiffs to raise the issue in the conference call with the Court. Indeed, when asked by the Court how Mattison

waived his privilege, Plaintiffs' counsel replied he had done so by "producing the psychological evaluation that was produced by DTA [and] by talking at his own deposition about his treatment there." (Unoff. Tr., at 6). Despite the fact that the Court had not yet issued an Order on the Motion, and the affirmative defense was known to the plaintiffs at that time, there was no statement by Plaintiffs' counsel that Mattison's affirmative defenses asserted as part of his Answer had now placed his mental state at issue. Instead, Plaintiffs are now attempting to assert an alternative argument that they failed to present in support of their motion now that their first attempts to obtain the privileged documents failed.

## B. Manifest Errors of Law

Next, Plaintiffs argue that the Court committed two errors of fact. Plaintiffs contend:

> The errors are as follows: (1) DTA invoked the patient/psychotherapist privilege, and they lack the standing to do so validly; (2) The Court appropriately found that Mattison waived the patient/psychotherapist privilege by disclosing the October 25, 2010 DTA Evaluation as an expert report, however the Court failed to enforce the full scope of the waiver it its Order.

(Doc. 112, at 7).

We will address Plaintiffs' second argument first. The Court did not find that "Mattison waived the patient/psychotherapist privilege by disclosing the October 25, 2010 DTA Evaluation" as Plaintiffs inaccurately state. Instead, the Court found that the "erroneous" disclosure of the Psychological Evaluation amounted to an admission of a failure to assert the psychologist/psychiatrist-patient privilege as to *this* document and that Mattison's prior deposition testimony addressed most, if not all, of the historical information

6

found in the evaluation at issue. The Court specifically identified portions of the evaluation that addressed Mattison's treatment as to which the privilege had not been waived and stated that these portions remained privileged. The Opinion is clear that the Court found the documents listed in the Philadelphia Diversified Treatment Claim File Privilege Log to be privileged short of compelling evidence by Plaintiffs as to the discoverability of specific document(s), not to the contents of the entire Privilege Log.

As to Plaintiffs' first argument, Plaintiffs are correct that "a psychotherapist may not invoke the federal patient/psychotherapist privilege on behalf of the patient." (Doc. 112, at 8). However, this is only true if the patient has already waived the privilege. (*See Pearson v. Miller*, 211 F.3d 57, 69 (3d Cir. 2000) ("Because of the particular circumstances of this case, *in which Mr. Miller has waived assertion of his confidentiality interests*, in order for appellants [Luzerne County Children and Youth Services, Inc. and KidsPeace National Centers for Kids in Crisis, Inc.] to be protected by such a privilege, it would have to be a privilege of a very unusual sort. . . ." (italics added)). Plaintiffs correctly recognize this rule, but base their argument on the assertion that this Court "expressly found that Mattison waived the privilege through the disclosure of the October 25, 2010 Evaluation." (Doc. 112, at 8). As addressed immediately above, the Court did not reach such a conclusion. Further, Mattison, as the privilege holder, has never signed a release allowing DTA to divulge his treatment records. (Def. Duane Mattison's Br. in Opp. to Mot. to Compel, Doc. 101, at 1). Consequently, while DTA alone may not invoke the patient/psychotherapist

privilege on behalf of Mattison, the organization is fulfilling both its legal and ethical obligations in denying the Swangers access to documents listed within the Privilege Log at issue here in light of the absence of a waiver by Mattison.

## V. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' Motion for Reconsideration (Doc. 111). Should Plaintiffs wish the Court to conduct an *in camera* review of document(s) listed within the Philadelphia Diversified Treatment Claim File Privilege Log, they must file a separate motion to this effect. A separate Order follows.

_____
Robert D. Mariani
United States District Judge