THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELAINE AND VICTOR SWANGER,<br>as parents and legal guardians of<br>B.J.S., and B.J.S. | : | |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | 4:11-CV-894 |
| | : | (JUDGE MARIANI) |
| WARRIOR RUN | : | |
| SCHOOL DISTRICT, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is a Motion for *In Camera* Review (Doc. 124) filed by

Plaintiffs, Elaine and Victor Swanger and their child, B.J.S. On June 30, 2014, in response

to Plaintiffs' motion, the Court issued an Order requiring Defendant, Diversified Treatment

Alternatives, Inc. ("DTA"), to produce the specific documents contained in the Philadelphia

Diversified Treatment Claim File Privilege Log identified by Plaintiffs in their motion (*see*

Doc. 124, Ex. B, C, D) for an *in camera* inspection by this Court and deferring a

determination of Plaintiffs' motion until the Court received the requested documents. (Doc.

138).[1] DTA promptly produced the documents at issue. As a result, the Court issued an

---

[1] While the Court's June 30, 2014 Order deferred a determination of Plaintiffs' motion for *in camera* review until we had received the documents at issue from DTA and could determine whether "compelling evidence" that the psychotherapist-patient privilege had been waived with respect to any of the requested documents, the Order also stated that Plaintiffs' motion was granted. (Doc. 138). Since we have determined in the present opinion that the psychotherapist-patient privilege has not been waived except for

Order confirming that the information outlined by DTA in the Privilege Log accurately reflected the contents of the records, but requesting supplemental briefs by the parties detailing whether any of the documents were subject to any confidentiality protections or privileges under federal or state statute or at common law, other than the psychotherapist-patient privilege provided under 42 PA. CONS. STAT. ANN § 5944, and how any, or all, of the documents were, or were not, relevant to Plaintiffs' claims. (Doc. 144).

Plaintiffs' motion for *in camera* review enumerated specific documents, or categories of documents, listed in the Philadelphia Diversified Treatment Claim File Privilege Log. Specifically, Plaintiffs requested the listed (1) Psychological Evaluations, Psychiatric Evaluations, Neuropsychological Assessments, and Psychological/Psychiatric Evaluations, arguing that "at the very least, these documents contain non-privileged portions as determined with respect to the October 25, 2010 Psychological Evaluation"; (2) Case Notes and Summaries, claiming that these documents "would largely contain information other than communications between Defendant Mattison and his psychiatrist, such as opinions, observations, or diagnosis, which is not protected by the [psychotherapist-patient] privilege"; and (3) an email from Erik Cummings to Karen Bloom, because "the document is not likely to contain communications between Defendant Mattison and his psychiatrist and therefore not protected by the privilege." (Doc. 125, at 4).

---

portions of the October 25, 2010 psychological evaluation and further that the documents in question are protected from disclosure under the Mental Health Procedures Act, our Order is vacated to the extent that it indicated that Plaintiffs' motion (Doc. 124) was granted.

As we previously stated in the Court's Memorandum Opinion denying Plaintiffs'

Motion for Reconsideration of our March 17, 2014 Order (Doc. 120), a psychotherapist may

not invoke the federal psychotherapist-patient privilege on behalf of his or her patient.

However, while DTA alone may not invoke this privilege on behalf of Mattison, absent a

waiver by Mattison or a decision by this Court that one of more of the documents at issue,

or portions of those documents, are not protected by the psychotherapist-patient privilege or

any other applicable federal or state statute or at common law, DTA has a legal and ethical

duty to deny the Swangers access to the requested documents listed within the Privilege

Log. It is undisputed that Mattison never signed a written waiver releasing any treatment

records or documents in DTA's possession to Plaintiffs. Therefore, the issues before this

Court are what protections, if any, apply to the requested documents and whether Mattison

can be deemed to have waived by implication those protections with respect to some, or all,

of his treatment records. For the reasons that follow, we have determined that all of the

documents requested by Plaintiffs are protected from disclosure by the psychotherapist-

patient privilege and/or the Mental Health Procedures Act and that Mattison did not waive

any privilege such as to compel DTA to provide Plaintiffs with any of the requested

documents. Accordingly, we will deny Plaintiffs' motion for *in camera* review.

## II. ANALYSIS

As a threshold issue, the Court is governed by Federal Rule of Evidence 501 which

provides that:

> The common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court.

> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

FED. R. EVID. 501. Consequently, while federal law recognizes a psychotherapist-patient privilege, *see Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the extent and specific contours of this established privilege are dictated by Pennsylvania law, subject to the Supreme Court's delineation that the alleged privileged communications were made (1) confidentially, (2) between a licensed psychotherapist and her patient, and (3) in the course of diagnosis or treatment, *id.* at 15. In light of these requirements, the Supreme Court also expressly rejected the necessity of a balancing analysis of the evidentiary need for disclosure of the psychotherapist-patient communications against the patient's privacy interests. *Id.* at 7, 17.

### A. Psychotherapist-Patient Privilege Under 42 PA. CONS. STAT. ANN. § 5944

In the Commonwealth of Pennsylvania, the psychotherapist-patient privilege statute provides that:

> No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 PA. CONS. STAT. ANN. § 5944.

While exceptions exist to the patient-psychotherapist privilege, "[t]he law in [Pennsylvania] makes clear that the privilege accorded confidential communications between the client and the psychotherapist must prevail under most circumstances." *Com. v. Simmons*, 719 A.2d 336, 341 (Pa. Super. Ct. 1998). *Cf. Jaffee*, 518 U.S. at 18 n.19 ("Although it would be premature to speculate about most future developments in the federal psychotherapist privilege, we do not doubt that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist").[2] Pennsylvania Courts therefore look at several factors in determining what information contained in the psychiatric reports is protected by the psychotherapist-patient privilege.

> [I]t is clear that the privilege is designed to protect confidential communications made and information given by the client to the psychotherapist in the course of treatment. The psychiatric file is imbued with the privilege because it might contain such confidential information. However,

---

[2] For example, the psychotherapist-patient privilege:
[D]oes not extend to information regarding the occurrence of treatment, including "whether a psychotherapist treated [him], the dates of such treatment, and the length of treatment on each date." *United States v. Sturman*, No. 96 CR. 318, 1998 WL 126066, at *4 n. 6 (S.D.N.Y. Mar. 20, 1998). *See also Jackson v. Chubb Corp.*, 193 F.R.D. 216, 219 n. 4 (D.N.J. 2000) (identity of health care provider and dates of treatment not privileged); *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 230 (D. Mass. 1997) ("Facts regarding the very occurrence of psychotherapy, such as the dates of treatment, are not privileged.").
*Perry v. City of New Haven*, 2012 WL 3887061, at *2 (D. Conn. Sept. 6, 2012).
Here, while the Swangers may be entitled to this category of basic information, they have not stated a desire or need for such disclosure to the extent that they do not already have the information. Furthermore, there is no indication that "a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist", as suggested would be necessary by the Supreme Court, *see Jaffee*, 518 U.S. at 18 n.19.

the privilege is not designed to specifically protect the psychotherapist's own opinion, observations, diagnosis, or treatment alternatives particularly when such information finds its way beyond the client's personal file. While such information may be protected from disclosure by some other privilege, we decide that the § 5944 privilege is designed to protect disclosures made by the client. Having said this, we need to look to the precise nature of the files [the treatment facility] seeks to protect, and their actual role in the treatment process.

*Simmons*, 719 A.2d at 341.  Plaintiffs rely on this well-established case law in Pennsylvania, and state that "the psychiatric-patient privilege is a testimonial privilege that does not protect opinions, observations or diagnoses", to assert that certain documents listed in the Philadelphia Diversified Treatment Claim File Privilege Log are not subject to the asserted privilege.  (Doc. 125, at 2).  This statement seemingly concedes that certain documents, or portions thereof, are privileged to the extent they contain confidential communications made, and information given, by Mattison to his psychotherapist(s) in the course of his treatment.

Of critical importance, the Psychological Evaluations, Psychiatric Evaluations, Neuropsychological Assessments, and Psychological/Psychiatric Evaluations, as well as the case notes and summaries produced by DTA were beyond any serious doubt completed in the course of diagnosis or treatment.  And, while the case law indicates that the opinions, observations, diagnosis, and treatment alternatives outlined by the psychotherapists who interviewed and spoke with Mattison during his treatment at DTA may not be privileged under Section 5944, such documents, and the information contained therein, as well as all other documents Plaintiffs request be reviewed *in camera* by this Court, are nevertheless

6

entirely protected from disclosure by a different privilege, specifically, the Mental Health

Procedures Act, 50 P.S. § 7101, *et seq*.[3]

## B. Protection Under The Mental Health Procedures Act

In Defendants DTA and Alvin Weaver's supplemental brief, Defendants argue that

"even if this Court finds that the documents are not protected by the psychotherapist-patient

privilege, they are still protected from disclosure under the [Mental Health Procedures Act]".

(Doc. 145, at 12).

The Mental Health Procedures Act ("MHPA") "establishes rights and procedures for

all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for all

voluntary inpatient treatment of mentally ill persons." 50 P.S. § 7103. The MHPA provides

broad protection for the confidentiality of records, specifically:

> All documents concerning persons in treatment shall be kept confidential and,
> without the person's written consent, may not be released or their contents
> disclosed to anyone except:
> (1) those engaged in providing treatment for the person;
> (2) the county administrator, pursuant to section 110;
> (3) a court in the course of legal proceedings authorized by this act; and
> (4) pursuant to Federal rules, statutes and regulations governing disclosure of
> patient information where treatment is undertaken in a Federal agency.
> In no event, however, shall privileged communications, whether written or
> oral, be disclosed to anyone without such written consent.

---

[3] To the extent that Plaintiffs argue that all, or part, of the Psychological Evaluations, Psychiatric Evaluations, Neuropsychological Assessments, and Psychological/Psychiatric Evaluations have been waived due to DTA's disclosure of the October 25, 2010 report, we refer back to the Court's initial determination in its March 17, 2014 and June 3, 2014 Orders (Docs. 109, 120) in which we strictly limited any waiver of the privilege to the October 25 Psychological Evaluation, and only to the extent to which the information in the evaluation pertained to historical information that was also addressed in Mattison's prior deposition testimony; as well as the fact that DTA alone could not waive the privilege absent a waiver by Mattison.

50 P.S. § 7111(a). *See also Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456, 465 (3d Cir.

1996)("[U]nlike conventional privileges that apply only to certain *communications,* section

111 of the MHPA creates a much broader protection, forbidding the disclosure of *any*

*document* 'concerning persons in treatment' *regardless of the contents of that*

*document."*)(emphasis in original); *Zane v. Friends Hosp.,* 836 A.2d 25, 32 (Pa.

2003)(Section 7111 "applies to *all* documents regarding one's treatment, not just medical

records.")(emphasis in original). The Act therefore creates "an absolute confidentiality

privilege against the disclosure of documents that 'concern persons in treatment.'"

*Hahnemann*, 74 F.3d at 465. "All documents relating to a person in treatment are

confidential unless one of the statutory exceptions applies or the patient has consented in

writing to the release of the documents." *Christy ex rel. Christy v. Wordsworth-at-Shawnee*,

749 A.2d 557, 559-560 (Pa. Cmwlth. 2000)(citing *Johnsonbaugh v. Dep't of Public*

*Welfare,* 665 A.2d 20 (Pa. Cmwlth. 1995), *aff'd,* 701 A.2d 1357 (Pa. 1997)). "In fact, with

the exception of cases in which the statutory privilege has been waived by the patient, it

seems that a Pennsylvania court has found in only one case that the protection conferred

by section 7111 of the MHPA should give way."[4] *Hahnemann,* 74 F.3d at 464. Plaintiff

properly does not attempt to argue that one of the four statutory exceptions listed in 50

---

[4] The exception is not relevant to the present case. In the case discussed in *Hahnemann*, "the [Pennsylvania Superior Court] essentially held that a therapist who learns of child abuse during therapy and is compelled to testify at a criminal trial will not be permitted to invoke the MHPA confidentiality privilege, given the competing statutory interests in the reporting of child abuse, and the statutory immunity from suit granted to those making such reports." *Hahnemann*, 74 F.3d at 464.

P.S. § 7111(a) is applicable here[5], and it is undisputed that Mattison did not consent in writing to the release of the documents. Therefore, the only issue is whether Mattison can be deemed to have waived by implication the protections of the MHPA.

Plaintiffs briefly address § 7111, arguing that Mattison waived his privilege of confidentiality by (1) testifying "in detail about his treatment at DTA, his sexually inappropriate behavior not only with [Plaintiff] BJS but with prior special education students and children in and outside of school"; (2) not asserting "any privilege of confidentiality when he testified at his deposition or in his criminal hearing"; (3) not contesting "the Court's finding that he waived the psychotherapist-patient privilege by producing Anderson's [October 25, 2010] report"; (4) not asserting any privilege of confidentiality when the Manifestation Determination Review . . . was read into the record during the deposition of DTA employee Shelly Diggan"; and (5) placing his own mental state at issue. (Doc. 147, at 8).

The Court has previously addressed several of Plaintiffs' arguments in prior Opinions and Orders, and need not do so again in detail. With respect to Anderson's report, the Court did not find, as Plaintiffs' repeatedly contend in each of their briefs submitted to this Court since March, 2014, that Mattison "waived the psychotherapist-patient privilege by producing Anderson's [October 25, 2010] report." Rather, the Court held that the "erroneous" disclosure of the October, 2010 Psychological Evaluation amounted to an admission of a failure to assert the psychologist/psychiatrist-patient privilege as to *this*

---

[5] To the extent that Plaintiffs were to argue that the third exception is applicable in this case, that exception has been strictly construed by Pennsylvania courts to only include involuntary and voluntary mental health commitment proceedings. *Com. v. Moyer*, 595 A.2d 1177, 1179 (Pa. Super. 1991).

document and that Mattison's prior deposition testimony addressed most, if not all, of the historical information found in the evaluation at issue. (Doc. 109). The Court specifically identified portions of the evaluation that addressed Mattison's treatment as to which the privilege had not been waived and stated that these portions remained privileged. *Id.* Our narrow finding renders Plaintiffs' argument that Defendants' failure to contest this ruling somehow indicates that Mattison generally waived his privilege completely unavailing.

Plaintiffs heavily rely on the Superior Court of Pennsylvania's decision in *Sprague v. Walter*, wherein the Court found that the admission into evidence of a defendant's confidential medical and psychiatric records in a libel action against the defendant and the newspaper that employed him was proper. *Sprague v. Walter*, 656 A.2d 890 (Pa. Super. Ct. 1995). However, such reliance is inapposite given the facts of the present case. Plaintiffs seemingly cite *Sprague* for two propositions: (1) Mattison's testimony, "in detail" at his deposition, is somehow similar to that of the defendant in *Sprague*, and constitutes a waiver of the confidential documents; and (2) by not asserting the privilege of confidentiality during his discovery deposition, he waived the privilege. (*See* Doc. 147, at 7-8).

In *Sprague*, the Court rejected Defendant's argument that he had only testified "as to basic general information about his treatment" and therefore not waived the privilege, finding that the defendant "testified at a discovery deposition related to the instant case, about the various medical/psychiatric treatments he had received from the age of ten through 1979. . . [and] the record shows that [Defendant] testified at some length during his

10

deposition about many of the details of his treatment, including dates of treatment, reasons for seeking it, physicians seen, and diagnoses made." *Sprague*, 656 A.2d at 911. With respect to Plaintiffs' first argument, the facts here are significantly different. Mattison's deposition testimony demonstrates that, while he did testify in some detail as to the incident with Plaintiff B.J.S., his discussion of what occurred at DTA, including his treatment and diagnosis, is minimal and superficial at best. As a result, Plaintiffs' second argument that Mattison's failure to assert the privilege of confidentiality amounts to a waiver of his privilege is meritless. While "[a] privilege of non-disclosure must be asserted during a discovery proceeding or it will be waived", *Sprague*, 656 A.2d at 911 (citing *Com. v. Kauffman*, 605 A.2d 1243 (Pa. Super. 1992)), Mattison was not presented with a situation which would have necessitated that he invoke the privilege. Mattison was never asked about the specifics of his treatment, activities, or diagnosis at DTA, such as to elicit testimony with respect to these topics and to put him on notice that there was a need to assert the privilege. *See Black's Law Dictionary* (9th ed. 2009)(An implied waiver is "evidenced by a party's decisive, unequivocal conduct reasonably inferring the intent to waive. An implied waiver may arise where a person has pursued such a course of conduct as to evidence an intention to waive a right, or where his conduct is inconsistent with any other intention than to waive it. Waiver may be inferred from conduct or acts putting one off his guard and leading him to believe that a right has been waived.")(Internal citations omitted). With respect to Plaintiffs' argument that Mattison waived any privilege of confidentiality by

not asserting it "when the Manifestation Determination Review . . . was read into the record during the deposition of DTA employee Shelly Diggan" (Doc. 147, at 8), the same analysis applies. A review of the Manifestation Determination reveals no details of Mattison's treatment, activities, programs, or diagnosis while at DTA, only broadly referencing the fact that he is under the care of DTA and Alvin Weaver, and had previously been in the DTA program and discharged because he had "met all of [DTA/MLC]'s requirements to exit the residential program." (*See* Doc. 147, Ex. 2). Such broad and brief assertions, read into the record during another person's deposition, are grossly insufficient to put Mattison on notice such that his failure to assert the privilege amounts to a waiver that privilege.

Plaintiffs' argument that Mattison's failure to assert "any privilege of confidentiality when he testified . . . in his criminal hearing" is equally unavailing and this general principal has been expressly rejected by Pennsylvania state courts. *See Christy*, 749 A.2d at 559-560 ("Here, [Defendant] has not executed a release and none of the statutory exceptions permit disclosure of his records. We see no basis in law or in logic for the proposition that a patient waives confidentiality to his or her mental health records simply because he or she admitted guilt in a juvenile proceeding.").

Plaintiffs' assertion that Mattison has put his mental state at issue because he "asserted the affirmative defense that he lacked the requisite 'malice or reckless indifference to any federally protected right of Plaintiffs' and did not 'otherwise meet the requirements of outrageousness, maliciousness, or recklessness needed to support an award of punitive

12

damages'" as well as providing Anderson's October 25, 2010 evaluation as an expert report (Doc. 147, at 4-5) is tenuous at best. While Mattison does assert such an affirmative defense, on the state of the record thus far, we see no indication that Mattison's defense is an assertion of a mental defect or infirmity that exonerates him or mitigates his conduct.

Consequently, to the extent that the opinions, observations, diagnosis, and treatment notes stated in the Psychological Evaluations, Psychiatric Evaluations, Neuropsychological Assessments, Psychological/Psychiatric Evaluations, and Case Notes and Summaries are not privileged under the federal psychotherapist-patient privilege and 42 PA. CONS. STAT. ANN. § 5944, they are covered by the MHPA's broad protections, wherein the disclosure of any document "concerning persons in treatment," regardless of the contents of that document, is forbidden.[6]   In light of *Hahnemann* and its progeny, the Court will therefore not conduct an *in camera* inspection as we could have done so only having first determined that Mattison explicitly or impliedly waived his privilege such as to prevent him from invoking the protections of 42 PA. CONS. STAT. ANN. § 5944 and the MHPA.[7]

---

[6] With respect to Plaintiffs' contention that they are "seeking records maintained by DTA regarding Mattison which will likely reveal the extent of their knowledge and communications with Warrior Run and third parties regarding Mattison's history of repeated and dangerous behavior" (Doc. 147, at 10), we agree that correspondence between DTA and Warrior Run is presumptively relevant and may be discoverable if its contents is not otherwise privileged.

[7] Any review of the documents provided to the Court by DTA has been strictly limited to determining that the documents were in fact "documents concerning persons in treatment" and therefore subject to the protections of the MHPA.

## III. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' Motion for *In Camera*

Review (Doc. 124). A separate Order follows.

Robert D. Mariani
United States District Court Judge